# EXHIBIT 26

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

April 29, 2011

Benjamin Wood
202-457-6685
bwood@pattonboggs.com

Mr. Daniel R. Petrole
Acting Inspector General
United States Department of Labor
200 Constitution Avenue, N.W.
Room S-5502
Washington, D.C. 20210

Re:    Performance Coal Company's Complaint of Witness Intimidation, Abuse of Authority,
       and Obstruction of Justice by Department of Labor Officials

Dear Mr. Petrole:

This letter constitutes Performance Coal Company's ("Performance") formal complaint regarding
the blatant misconduct of MSHA Chief Investigator Norman G. Page in the course of the
government's investigation of the Upper Big Branch mine tragedy. As explained in greater detail
below, Mr. Page has knowingly obstructed a search for the truth by (1) repeatedly ordering the
withdrawal of Performance's scientific experts from the mine without a good faith basis;
(2) attempting to intimidate Performance's experts with retaliatory citations and orders; and
(3) orchestrating a closed-door confrontation of a counsel-retained expert in which Mr. Page
unambiguously threatened future retaliatory orders against the expert—in this investigation and
any others—in an attempt to influence the expert's work product and opinions. Performance
presents this complaint to the Office of Inspector General because the Solicitor of Labor, M.
Patricia Smith, has failed to perform an adequate investigation of Mr. Page, preferring instead to
overlook wrongdoing to which he has essentially admitted. It is, therefore, left to the Inspector
General to conduct a formal investigation of this serious misconduct.

## I.    Relevant Facts

### A.    Background

Performance owns and operates the Upper Big Branch mine ("UBB"), an underground coal mine
in Montcoal, Raleigh County, West Virginia. MSHA administers the provisions of the Federal
Mine Safety and Health Act and regulations promulgated thereunder, *see* 30 U.S.C. § 801, *et seq.*,
to improve safety and health standards in mining. As part of MSHA's mandate, the agency
investigates most mining accidents, including all mining fatalities. *See id.* § 813. To meet its

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Daniel R. Petrole
April 29, 2011
Page 2

objectives, MSHA has organized the country into 11 distinct Coal Mine Safety and Health Districts. UBB falls under the purview of District 4.

On April 5, 2010, an explosion at UBB killed twenty-nine miners. Within hours of this tragedy, MSHA issued an order under Section 103(k) of the Mine Act, 30 U.S.C. § 813(k) (Order No. 4642503), seizing control of the mine. (Attachment 1) After a rescue and recovery effort that included MSHA, the State of West Virginia, Performance, and rescuers from numerous other mine operators, MSHA began preparations for its investigation into the explosion. The Secretary of Labor appointed Norman Page to lead MSHA's investigation team, in part, because as the District Manager for District 6 he was not directly affiliated with those who normally oversaw UBB and whose oversight of the mine would have to be scrutinized. *See* MSHA News Release, *MSHA Appoints Team to Investigate Upper Big Branch South Mine Explosion* (April 7, 2010) (Attachment 2). While Mr. Page, in his role as District 6 Manager, did not have regulatory oversight of Performance or UBB, he has supervised a number of mines operated by Massey Energy Company, Performance's parent corporation.

MSHA's investigation of the UBB accident has consisted primarily of an underground investigation and witness interviews. Mr. Page has run both aspects secretively, excluding the victims' families, Performance and the public from any meaningful participation. With respect to the underground investigation, Mr. Page permitted only a single Performance representative to observe MSHA's investigation teams and, although Performance has a statutory obligation to conduct its own independent investigation, MSHA specifically precluded Performance from using photography or electronic mine mapping to preserve critical evidence and even attempted to coerce the company into destroying evidence by applying rock dust or water to areas still under investigation. With respect to formal witness interviews, Mr. Page has excluded Performance from the overwhelming majority, allowing company counsel to attend only interviews of witnesses deemed by MSHA to be corporate "control persons." Mr. Page also ignored repeated complaints from counsel—on behalf of the company and numerous individuals—that MSHA lured witnesses to interviews under false pretenses, intimidated witnesses with hostile questioning, and denied witnesses an opportunity to review or correct interview transcripts. In retrospect, the hostility directed at these witnesses presaged Mr. Page's abuse of Performance's experts.[1]

**B.     First Interference With—and Intimidation of—Performance's Experts**

The complexity and scope of the UBB accident required Performance and MSHA to retain and consult experts in fire and explosion dynamics, geology, and other scientific disciplines. At a

---

[1] There is a long history of correspondence exchanged between Performance and MSHA documenting these events, which Performance would be happy to share.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Daniel R. Petrole
April 29, 2011
Page 3

minimum, certain experts needed to view the accident site in order to contribute meaningfully to the investigation. As you know, expert participation in mining accident investigations is a longstanding, generally accepted practice and is not unique to the UBB accident investigation. *See, e.g., Sec'y of Labor v. Jim Walter Resources,* 27 FMSHRC 757 (A.L.J. Nov. 1, 2005). From the beginning, however, Mr. Page has attempted to obstruct Performance's experts by preventing them from using modern technology, by repeatedly excluding them from the mine, and by issuing retaliatory citations and orders.

The interference with—and intimidation of—Performance's experts began in earnest on October 7, 2010, when MSHA issued an unprecedented Section 104(a) citation (No. 8249951) against Performance and a Section 104(g)(1) order (No. 8249950) against Dr. Christopher Schemel, a consulting expert retained by Performance's counsel in its internal investigation. (Attachments 3, 4) With that order, MSHA denied Dr. Schemel access to UBB, ostensibly for not having received forty hours of "new miner" training. The frivolous nature of the order was plain: Not only is Dr. Schemel a scientist and not a miner, he was not conceivably "working" in the mine within the meaning of the regulation. *See* 30 C.F.R. § 48.2(a)(1)-(2). Since the start of the investigation over three months prior to the order, MSHA permitted Dr. Schemel only to accompany MSHA underground as an observer, which obviously did not trigger any training requirement. *See Sec'y of Labor, Mine Safety and Health Admin. v. SCP Invs.,* LLC, 31 FMSHRC 821 (Comm'n Aug. 10, 2009). As outlined in a letter sent to the Office of the Solicitor the following day, the citation and order were an unprecedented and unlawful attempt to exclude Performance's lead scientific expert on the eve of its independent investigation and threatened Performance's constitutionally guaranteed access to evidence. *See* Letter from Benjamin D. Wood to Derek J. Baxter and Matthew N. Babington (Oct. 8, 2010) (Attachment 5).

One week later, MSHA finally permitted Performance to begin its own independent investigation, though still under restrictive protocols incorporated into the Section 103(k) control order (Order No. 4642503). Performance's investigation and those of MSHA and the West Virginia Office of Miners' Health Safety & Training are ongoing.

**C.    February 14, 2011 Safety Incident and Mr. Page's Continued Retaliation, Intimidation, and Obstruction of Performance's Experts**

On February 14, 2011, United Mine Workers of America ("UMWA") agent Leon Moscalink, functioning as a miners' representative under the Mine Act, accompanied Performance's accident investigation team and MSHA inspector Randall Lewis underground. As the team examined a shield hauler and charging station in the mine, Mr. Moscalink used a slate bar to dislodge a piece of rock measuring approximately 3' x 5' x 2" from the mine roof. The rock fell directly onto the shield hauler and charging station, damaging these important pieces of evidence and endangering the safety of the investigation team. Mr. Moscalink ignored the repeated pleas of Dr. Pedro Reszka—Performance's scientific expert and colleague of Dr. Schemel's at Delta Q Fire &

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Daniel R. Petrole
April 29, 2011
Page 4

Explosion Consultants, Inc. ("Delta Q")—to cease scaling rock from the roof directly above team members. Instead, Mr. Moscalink berated Dr. Reszka for expressing concerns about team members' safety and the potential loss of important evidence. He eventually stopped scaling rock hanging directly above the investigation team, but continued to do so in other parts of the mine.

Concerned about Mr. Moscalink's reckless and potentially hazardous actions, I contacted Matthew N. Babington, Esq. of the Office of the Solicitor on February 16. I expressed my concerns about Mr. Moscalink's behavior and requested that MSHA take appropriate action, including termination of Mr. Moscalink as a miners' representative. Mr. Babington agreed to look into the incident. Less than twenty-four hours later, however, MSHA issued an astounding order and citation against Delta Q and Performance (Order No. 8405518, Citation No. 8405519) and *not* against Mr. Moscalink, alleging that Dr. Reszka failed to recognize mine hazards and ordering his removal from the mine pending further training. (Attachments 6, 7) On learning of this appalling abuse of authority, I informed Mr. Babington, who conceded that "the complaint from yesterday started the discussion" that culminated in the action taken against Dr. Reszka and Performance, essentially admitting that MSHA had retaliated against Dr. Reszka for advising MSHA about Moscalink's hazardous behavior. After further consultations, the Office of the Solicitor, recognizing the obviously retaliatory nature of those actions, agreed to vacate both the order and citation (Order Nos. 8405518-02, 8405519-02).

Undeterred by the rebuke of his own counsel, Mr. Page chose to escalate hostilities by demanding a meeting with Dr. Schemel and two Performance employees, Wayne Persinger and Chris Prater, ostensibly to discuss vacatur of the retaliatory order and citation. When the parties assembled the following morning at UBB, however, Mr. Page unexpectedly excluded the Performance employees from the conference room and bore down on Dr. Schemel in private. Notably, if MSHA had sought a witness interview of Dr. Schemel at the National Mine Academy, Performance's counsel, who retained Dr. Schemel to conduct a privileged investigation in preparation for possible litigation, obviously would have rejected the request. Consequently, Mr. Page's sequestration of Dr. Schemel improperly circumvented Performance's attorney-client privilege and work product protections. His use of a citation conference as a guise to force a retained expert into a secret interview is, therefore, grounds for discipline independent of his subsequent misconduct.

Having cornered Dr. Schemel under false pretenses, Mr. Page aggressively attempted to obstruct Dr. Schemel from fully participating in Performance's investigation of the UBB accident. Mr. Page stated that although Performance and Delta Q had retained counsel and the Office of the Solicitor had vacated the citation and order, such agreements meant nothing underground, where Mr. Page was in charge. Mr. Page expressed anger that Department officials agreed to vacate his order without consulting him. He then bluntly explained that Delta Q and Dr. Schemel had two options: They could continue to insist that Mr. Page honor the government's agreement to vacate the order or, as Mr. Page preferred, they could allow him to convert the removal order to

**PATTON BOGGS**LLP
ATTORNEYS AT LAW

Mr. Daniel R. Petrole
April 29, 2011
Page 5

a citation, direct Dr. Reszka to complete additional training, and terminate the citation afterward. Mr. Page also warned that if Performance and Delta Q continued to rely upon the agreement reached by their "Washington lawyers," he would have UMWA and MSHA representatives scour Performance's investigative notes, photographs and videos for evidence to support retroactive citations against Delta Q, Dr. Schemel, Dr. Reszka, and Performance. In other words, the consequence of rectifying the original retaliation would be *greater* retaliation. To demonstrate the sincerity of his threats, Mr. Page showed Dr. Schemel photographs of Performance and Delta Q investigation team members working in the mine under what Mr. Page mischaracterized as unsafe conditions that would be the basis for retaliatory retroactive citations.

After attempting to undermine the agreement reached by his own attorneys, Mr. Page then attacked Dr. Schemel's role in the investigation and attempted to influence his conclusions and work product. Mr. Page repeatedly asked Dr. Schemel what his "intent" or "purpose" was, alleged that Performance's only purpose was to discredit MSHA, and suggested that Dr. Schemel would have to manipulate data and violate ethical rules in order to reach conclusions that differed from those of MSHA. Mr. Page then ended the confrontation with a threat to Dr. Schemel's livelihood, warning that MSHA and the UMWA could similarly target him on future mine projects anywhere in the United States, effectively making it impossible for Dr. Schemel to work in the mine industry. The deliberate reference to the UMWA—and by implication, the unfortunate history of violence in the coal fields—left Dr. Schemel concerned about his physical safety and prompted him to explore retaining guards to protect his family and himself.

Though MSHA does not appear to dispute the above facts, it is important to note that Mr. Page himself corroborated the above account. Immediately after his hour-long inquisition of Dr. Schemel, Mr. Page and MSHA agents Tim Watkins and Jasey Maggard visited Performance's investigation headquarters and repeated to Performance employees many of the same threats. Specifically, Mr. Page emphasized that it would be in the company's interest to agree to allow Mr. Page to change the Reszka removal order to a citation because vacatur of the order would result in the issuance of numerous additional citations. Mr. Page then reiterated these same threats during a February 20 phone conversation with Performance employee Chris Prater, who nevertheless informed him that Delta Q and Performance would insist on MSHA's adherence to the Solicitor's agreement to vacate the citation and order. Mr. Page concluded this episode with one final phone call on February 24, in which he repeated those threats and also suggested to a Performance employee that the company should not rely upon its counsel and admitted what Performance tentatively assumed, namely, that he does not always follow the advice of the Solicitor.

**D.    Performance's Response and Further Retaliation from Mr. Page**

On February 18, minutes after learning of Mr. Page's confrontation with Dr. Schemel earlier in the morning, I again contacted Mr. Babington of the Solicitor's Office and specifically

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Daniel R. Petrole
April 29, 2011
Page 6

complained about Mr. Page's dramatic escalation of abusive conduct. Mr. Babington informed me later that afternoon, after consulting with Mr. Page, that Mr. Page intended to honor the agreement on vacatur, but that the Solicitor's Office could not prevent him from issuing retroactive citations relating to the UMWA's review of investigation notes, videos, and photos.

On February 24, however, Mr. Page struck again, ordering Performance immediately to withdraw from the mine yet another counsel-retained scientific expert, John Montoya, Jr., of Baker Engineering and Risk Consultants, Inc. ("Baker Risk"). The order flew in the face of a longstanding agreement between MSHA and Performance to permit any member of the investigation team who would not spend more than five days underground to attend five hours of safety training rather than forty hours of "new miner" training. Mr. Montoya had completed the required five-hour training and was about to enter the mine for his fifth day of investigation when MSHA obstructed his entry on the frivolous ground that that Mr. Montoya's underground training counted as a day worked, which meant that Mr. Montoya had exhausted his five allotted days. MSHA's tortured interpretation was nothing more than a fulfillment of Mr. Page's prior pledge to retaliate against Performance for insisting on Mr. Page's adherence to the Solicitor's agreement to vacate the Reszka order and citation.

On the afternoon of February 24, I spoke with Derek Baxter, Esq. of the Solicitor's Office to relay the full details of Mr. Page's continuing misconduct. Within an hour of that telephone conversation, Mr. Page called Mr. Prater to advise him that Mr. Montoya's ouster was the first of much more "paperwork" resulting from the failure of Performance to cave in to his demands on the Reszka matter. Having obviously heard from Mr. Baxter that his misconduct had been exposed, Mr. Page also threatened that if Performance "took action" to oppose him then he would reinstate the recently vacated Reszka order and citation.

That very same afternoon, Mr. Page's subordinates in District 6 hastily scheduled an inspection of Massey's Southern West Virginia Mine Rescue station, located adjacent to UBB. Not coincidentally, the captain of that mine rescue team, Rob Asbury, was with Dr. Reszka on the day that they witnessed the unsafe practices of the miners' representative, Mr. Moscalink, which led to the retaliation described above. This purported "inspection" was obviously a further effort at retaliation and intimidation; there is no legitimate reason for District 6 employees to inspect a District 4 mine rescue station located outside of their jurisdiction. Indeed, that same mine rescue station already had been audited several times after the UBB accident by District 4 inspectors, who gave the unit high marks. MSHA immediately cancelled this bogus "inspection" once I notified the Office of the Solicitor, which no doubt recognized it as retaliatory.

### E.    The Solicitor of Labor's Failure to Conduct an Adequate Investigation

After informing the Solicitor's Office on February 24 of Mr. Page's ongoing misconduct, Robert Luskin and I also reported his actions to Steven Ruby, the Assistant United States Attorney for

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Daniel R. Petrole
April 29, 2011
Page 7

the Southern District of West Virginia who leads the grand jury investigation of the UBB accident. That same evening, Mr. Baxter assured me that our complaints were being investigated "at the highest levels." I would note that during subsequent conversations with Messrs. Baxter and Babington, the Solicitor's Office never disputed the facts underlying Performance's complaints.

On March 30, I received a call from the Solicitor of Labor, Patricia Smith, who explained that, although Performance's recitation of the facts was materially correct, she had concluded that Mr. Page had "no intent to intimidate" Dr. Schemel or other witnesses and that the string of questionable orders and citations were not retaliatory. These were startling conclusions in light of her concession that Mr. Page admitted asking Dr. Schemel whether his work product was intended to uncover the truth or rather to discredit MSHA—as if the two were mutually exclusive—and admitted accusing Dr. Schemel of manipulating data and acting unethically. Ms. Smith explained that two MSHA inspectors claimed to have overheard Dr. Schemel say that he could discredit MSHA's theory of the explosion, as if that somehow justified Mr. Page's hostility toward Dr. Schemel. Indeed, even if Dr. Schemel had made such a comment—which he did not—Mr. Page's knowing attempt to alter Dr. Schemel's conclusions would be *more* unlawful, not less. As to Mr. Page's outlandish threat to Dr. Schemel's livelihood, Ms. Smith credited Mr. Page's contention that he had only mentioned UMWA (not MSHA) retaliation against Dr. Schemel and Delta Q, which is not only false, but even on its own terms hardly comforting to the targets.

Though Ms. Smith repeatedly assured me that her investigation was thorough, she admitted that she had spoken only to Mr. Page, a UMWA official and the two MSHA inspectors who had accompanied Dr. Schemel. The Solicitor's Office never sought to interview Dr. Schemel or any Performance representative. Ms. Smith also showed no willingness to consider the long list of corroborating and confirming witness statements detailed above. Solicitor Smith only conceded the obvious fact that it was "inappropriate" for Mr. Page to meet privately with a consulting expert retained by Performance's counsel, regardless of what was discussed. Solicitor Smith concluded the call by advising me that Mr. Page would remain in charge of MSHA's investigation, but with her assurance that he would not repeat such inappropriate behavior.

Solicitor Smith's faith in Mr. Page was misplaced. Just two days later, on April 1, Mr. Page sent a letter to Dr. Schemel and Mr. Prater asking them to attend another meeting with MSHA and the UMWA to discuss the vacated order and citation against Delta Q and Performance involving Dr. Reszka. (Attachment 8) Several days later, Mr. Page's investigation team even demanded the original documents for all of Dr. Reszka's training records. Mr. Page's continued and conspicuous attention to this subject proves again his determination to obstruct and intimidate Performance's experts, despite Ms. Smith's assurances to the contrary.



Mr. Daniel R. Petrole
April 29, 2011
Page 8

## II.    Mr. Page's Conduct Is Improper and Unlawful

Because the Office of the Solicitor has demonstrated an inability or unwillingness to constrain Mr. Page, Performance asks the Office of Inspector General to exercise its authority under 5 U.S.C. App. 3 § 4(a)(1) to open a formal investigation of Mr. Page's misconduct and to take appropriate disciplinary action to protect Performance and its experts from further violations of their rights. *See* Semiannual Report to Congress, Volumes 64, 65 (Apr. 1, 2010 – Sept. 30, 2010) ("The [Office of Inspector General] is charged with the responsibility for conducting investigations into possible misconduct or criminal activities involving DOL employees or individuals providing services to the Department.").

*First*, Mr. Page's conduct amounts to a violation of federal criminal law that warrants a referral by this office to the Attorney General. *See* 5 U.S.C. App. 3 § 4(c). As you know, it is a felony to "obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so." 18 U.S.C. § 1512(c)(2). The federal grand jury currently investigating the UBB mine accident is one such "official proceeding." *See* 18 U.S.C. § 1512(g)(1) (noting that grand jury investigation is "official proceeding" for purposes of witness intimidation statute). *See also* 18 U.S.C. § 1505 (federal crime to "corruptly, or by threats or force, or by any threatening letter or communication influence[], obstruct[], or impede[] or endeavor[] to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department of agency of the United States"); 18 U.S.C. § 1513(b)(1) (federal crime to "knowingly engage[] in any conduct and thereby cause[] bodily injury to another person or damage[] the tangible property of another person, or threaten[] to do so, with intent to retaliate against any person for the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding"). Mr. Page's blatant attempt to intimidate Dr. Schemel and to influence both his findings and his very willingness to participate as a defense expert violate federal criminal law. At a minimum, Mr. Page cannot be allowed to continue in his present position as chief accident investigator, where he is in position to interfere unlawfully with Performance's independent investigation.

*Second*, Mr. Page's misconduct violates Performance's constitutional due process right to access evidence relevant to its defense without undue government interference. The Supreme Court consistently has held that the fundamental fairness element of due process includes a meaningful opportunity to present a full defense, and to safeguard that right the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence," which obligates the government to both preserve and grant access to defense evidence. *California v. Trombetta*, 467 U.S. 479, 485 (1984) (quotation omitted). Mr. Page has significantly infringed upon this right by obstructing Performance's access to the accident site and by attempting to intimidate Performance's experts from participating fully in the investigation. His abuse of authority also is the type of unconscionable government conduct that violates substantive due process. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (due process is violated

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Mr. Daniel R. Petrole
April 29, 2011
Page 9

where the agency's abuse of power "shocks the conscience," *i.e.*, where its conduct does not "comport with traditional ideas of fair play and decency" or interferes with a right "implicit in the concept of ordered liberty."). Mr. Page, therefore, can be held personally liable for grossly infringing upon Performance's constitutional rights. *See, e.g., Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003).

*Third*, Section 105(c) of the Mine Act prohibits a mine operator from retaliating against any "miner, representative of miners, or applicant for employment in any coal or other mine" for reporting a safety violation. 30 U.S.C. § 815(c)(1). Yet Mr. Page, although responsible for the enforcement of this prohibition, issued retaliatory citations and orders precisely because Dr. Reszka raised safety concerns about a UMWA team member. *See, e.g.,* 5 U.S.C. App. 3 § 7(a) (providing for investigation by inspectors general into allegations of "abuse of authority"). Mr. Page compounded that misconduct by threatening and issuing additional citations and orders against Performance and its experts for reporting the initial retaliation in an effort to shield his conduct from scrutiny. *See, e.g., Administrative Investigation Misuse of Position, Abuse of Authority, and Prohibited Personnel Practices Office of Information & Technology Washington, DC*, Dep't of Veterans Affairs Office of Inspector General, Report No. 09-01123-195 (Aug. 18, 2009) (finding Veterans Affairs official abused her authority by influencing subordinates and third-party to further her personal goals).

Mr. Page's pattern of threats, retaliation, and witness intimidation—all designed to impede and obstruct Performance's defense of ongoing criminal and civil proceedings arising from the Upper Big Branch tragedy—requires a legitimate and unbiased investigation. I trust that the Inspector General will treat the issues raised above with the prompt and serious attention that they warrant. I may be reached at the number listed above should any questions arise.

Respectfully,

Benjamin D. Wood

cc:   Robert D. Luskin, Esq.
      Steven R. Ruby, Esq.
      M. Patricia Smith, Esq.

# Attachment 1

Mine Citation/Order

**U.S. Department of Labor**
Mine Safety and Health Administration

| Section I—Violation Data | | | | |
|---|---|---|---|---|
| 1. Date Mo Da Yr 04 05 10 | 2. Time (24 Hr. Clock) 1600 | | 3. Citation/Order Number | .4642503 |

4. Served To David Taraczkoey

5. Operator Performance Coal Company (Contractor)

6. Mine Upper Big Branch Mine, South

7. Mine ID 46-08436

8a. Written Notice (103g) ☐

8. Condition or Practice

An accident occurred at this operation on 04/05/2010 at approximately 3:27 pm. This order is being issued under the Federal Mine Safety and Health Act of 1977 Section 103(K), to prevent destruction of any evidence which would assist in investigating the cause or causes of the accident. It prohibits all activity in the underground areas of the mine except to rescue and recover miners.

See Continuation Form (MSHA Form 7000-3a) ☐

| 9. Violation | A. Health ☐ Safety ☐ Other ☐ | B. Section of Act | — | C. Part/Section of Title 30 CFR | ▪ |
|---|---|---|---|---|---|

**Section II—Inspector's Evaluation**

10. Gravity:

A. Injury or Illness (has) (is): No Likelihood ☐  Unlikely ☐   Reasonably Likely ☐  Highly Likely ☐  Occurred ☐

B. Injury or Illness could reasonably be expected to be: No Lost Workdays ☐   Lost Workdays or Restricted Duty ☐   Permanently Disabling ☐   Fatal ☐

D. Number of Persons Affected

C. Significant and Substantial (See Reverse):   Yes ☐   No ☐

11. Negligence (check one)   A. None ☐   B. Low ☐   C. Moderate ☐   D. High ☐   E. Reckless Disregard ☐

12. Type of Action  103-J - ,  — —

13. Type of Issuance (check one)   Citation ☐   Order ☒   Safeguard ☐   E. Dated   Mo Da Yr

14. Initial Action   A. Citation ☐   B. Order ☐   C. Safeguard ☐   D. Written Notice ☐   E. Citation/Order Number

15. Area or Equipment

| 16. Termination Due | A. Date | Mo | Da | Yr | B. Time (24 Hr. Clock) | |
|---|---|---|---|---|---|---|

**Section III—Termination Action**

17. Action to Terminate

| 18. Terminated | A. Date | Mo | Da | Yr | B. Time (24 Hr. Clock) | |
|---|---|---|---|---|---|---|

**Section IV—Automated System Data**

19. Type of Inspection (activity code) E09

20. Event Number 6286065

21. Primary or Mill

22. Signature

23. AR Number

MSHA Form 7000-3, Mar 85 (Revised)

Mine Citation/Order
Continuation

**U.S. Department of Labor**
Mine Safety and Health Administration·

Section I—Subsequent Action/Continuation Data

| 1. Subsequent Action | 1a. Continuation | 2. Dated (Original Issue) | | | | 3. Citation/Order Number | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☑ | ☐ | Mo 04 | Da 05 | Yr 10 | | 4842583 | 01 | | |

4. Served To: *Elizabeth Chamberlain*

5. Operator: *Performance Coal Company* (Contractor)

7. Mine ID: 46-08436

6. Mine: *Upper Big Branch Mine-South*

Section II—Justification for Action

*The initial order is modified to reflect that MSHA is now proceeding under the Authority of Section 103(K) of the Federal Mine Safety and Health Act of 1977. This Section 103(K) Order is intended to protect the safety of all persons on site, including those involved in rescue and recovery operations or investigation of the accident. The mine operator shall obtain prior approval from an Authorized Representative of the Secretary for all actions to recover and/or restore operations in the affected Area. Additionally, the mine operator is reminded of its existing obligations to prevent the destruction of evidence that would aid in investigating the cause or causes of the accident.*

*Section II, Item 12 is modified to 103(K).*

See Continuation Form ☐

Section III—Subsequent Action Taken

| 8. Extended To: | A. Date | Mo | Da | Yr | B. Time (24 Hr. Clock) | | | | C. Vacated ☐ | D. Terminated ☐ | E. Modified ☑ |
|---|---|---|---|---|---|---|---|---|---|---|---|

Section IV—Inspection Data

| 9. Type of Inspection | | 10. Event Number | 6286665 | | 11. Signature | | 12. Date Mo 04 Da 05 Yr 10 | 13. Time (24 Hr. Clock) 1720 |
|---|---|---|---|---|---|---|---|---|

AR Number

MSHA Form

# Attachment 2

# News Release



| | |
|---|---|
| U.S. Department of Labor | For Immediate Release |
| Office of Public Affairs | April 7, 2010 |
| Washington, D.C. | Contact:  Jesse Lawder      Jaime Zapata |
| Release Number: 10-454-NAT (191) | Phone:    202-693-4659     202-693-4676 |

## MSHA appoints team to investigate Upper Big Branch South Mine explosion

**ARLINGTON, Va.** – The U.S. Department of Labor's Mine Safety and Health Administration has appointed a team to investigate the April 5 explosion at the Upper Big Branch South Mine (Performance Coal Co.) in Whitesville, W.Va.

"Twenty-five hardworking men died unnecessarily in a mine Monday," said Secretary of Labor Hilda L. Solis. "The very best way we can honor them is to do our job.  MSHA's investigation team is committed to finding out what happened, and we will take action."

"The investigation team will work tirelessly to evaluate all aspects of this accident to identify the cause of the disaster," said Assistant Secretary of Labor for MSHA Joseph A. Main.

A team of MSHA mine safety professionals from outside the district responsible for enforcement at the Upper Big Branch South Mine will evaluate all aspects of the accident, including potential causes and the operator's compliance with federal health and safety standards. A formal report to be issued by MSHA will summarize the findings and conclusions of the investigative team, identifying root causes of the accident and how the incident unfolded. Any contributing violations of federal mine safety standards that existed will be cited at the conclusion of the investigation.

The Upper Big Branch Accident Investigation Team is being led by Norman Page, district manager of MSHA's District 6 in Pikeville, Ky.  Page has held a number of positions in his 25-year career with the agency, including mine inspector, ventilation/roof specialist, ventilation supervisor, roof control supervisor and assistant district manager. Page has participated in numerous accident investigations.

Other team members from MSHA's staff include Timothy Watkins, assistant district manager of District 6; Ben Harding, staff assistant of District 5 (Virginia); Erik Sherer, coal mine safety and health mining engineer from the headquarters office; Alvin Brown, program analyst of District 7 (Kentucky); Dave Steffey, mining engineer of District 6; Jerry Vance, educational field services specialist from Educational Policy and Development; and Jasey Maggard, electrical supervisor of District 7.  Rich Stoltz, supervisory general engineer, Ventilation Division; Clete Stephan, general engineer, Ventilation Division; Tom Morley, mining engineer, Ventilation Division; and Sandin Phillipson, geologist, Roof Control Division in the agency's Office of Technical Support also will assist in the investigation.

Additionally, Derek Baxter and Dana Ferguson, trial attorneys for the Labor Department's Office of the Solicitor, are on the team.

MSHA's mission is to administer the provisions of the Federal Mine Safety and Health Act of 1977, as amended by the Mine Improvement and New Emergency Response Act of 2006, and to enforce compliance with mandatory safety and health standards as a means to eliminate fatal accidents; to reduce the frequency and severity of nonfatal accidents; to minimize health hazards; and to promote improved safety and health conditions in the nation's mines.

# # #

U.S. Department of Labor releases are accessible on the Internet at http://www.dol.gov.  The information in this news release will be made available in alternate format (large print, Braille, audio tape or disc) from the COAST office upon request.  Please specify which news release when placing your request at 202-693-7828 or TTY 202-693-7755.  The Labor Department is committed to providing America's employers and employees with easy access to understandable information on how to comply with its laws and regulations.  For more information, please visit http://www.dol.gov/compliance.

# Attachment 3

Mine Citation/Order

U.S. Department of Labor
Mine Safety and Health Administration

◇

**Section I–Violation Data**

| 1. Date | Mo Da Yr 10/07/2010 | 2. Time (24 Hr. Clock) 0740 | | | 3. Citation/ Order Number | 8249951 |
|---|---|---|---|---|---|---|

| 4. Served To WAYNE PERSINGER, MINE MANAGER | 5. Operator PERFORMANCE COAL COMPANY |
|---|---|

| 6. Mine UPPER BIG BRANCH MINE–SOUTH | 7. Mine ID 46-08436 | (Contractor) |
|---|---|---|

8a. Written Notice (103g) ☐

**8. Condition or Practice**

The operator has failed to ensure that a contractor consultant working underground at the mine has received the required comprehensive 40-hour new miner training prior to performing duties underground.  The contractor has been working at the minesite for several months without the required training.  The operator's failure to ensure the contractor had the required training has resulted in the issuance of a 104(g)(1) order being issued to the contractor (Packer Engineering CID. A1131).

See Continuation Form (MSHA Form 7000-3a) ☐

| 9. Violation | A. Health ☐ Safety ☑ Other ☐ | B. Section of Act | | C. Part/Section of Title 30 CFR | 48.5(a) |
|---|---|---|---|---|---|

**Section II–Inspector's Evaluation**

| 10. Gravity: | | | | |
|---|---|---|---|---|
| A. Injury or Illness (has) (is): | No Likelihood ☐ | Unlikely ☐ | Reasonably Likely ☑ | Highly Likely ☐ | Occurred ☐ |
| B. Injury or illness could reasonably be expected to be: | No Lost Workdays ☐ | Lost Workdays Or Restricted Duty ☑ | | Permanently Disabling ☐ | Fatal ☐ |
| C. Significant and Substantial: | Yes ☑ | No ☐ | | D. Number of Persons Affected: | 001 |

| 11. Negligence (check one) | A. None ☐ | B. Low ☐ | C. Moderate ☑ | D. High ☐ | E. Reckless Disregard ☐ |
|---|---|---|---|---|---|

| 12. Type of Action 104(a) | 13. Type of Issuance (check one) | Citation ☑ | Order ☐ | Safeguard ☐ | Written Notice ☐ |
|---|---|---|---|---|---|

| 14. Initial Action A. Citation ☐   B. Order ☐   C. Safeguard ☐   D. Written Notice ☐ | E. Citation/ Order Number | F. Dated | Mo Da Yr |
|---|---|---|---|

15. Area or Equipment

| 16. Termination Due | A. Date | Mo Da Yr 10/15/2010 | B. Time (24 Hr. Clock) | 1600 | |
|---|---|---|---|---|---|

**Section III–Termination Action**

17. Action to Terminate

| 18. Terminated | A. Date | Mo Da Yr | B. Time (24 Hr. Clock) | |
|---|---|---|---|---|

**Section IV–Automated System Data**

| 19. Type of Inspection (activity code) E16 | 20. Event Number 4440348 | 21. Primary or Mill | |
|---|---|---|---|

| 22. Signature | | 23. AR Number | 23908 |
|---|---|---|---|

MSHA Form 7000-3, Apr 08 (revised)     In accordance with the provisions of the Small Business Regulatory Enforcement Fairness Act of 1996, the Small Business Administration has established a National Small Business and Agriculture Regulatory Ombudsman and 10 Regional Fairness Boards to receive comments from small businesses about federal agency enforcement actions. The Ombudsman annually evaluates enforcement activities and rates each agency's responsiveness to small business. If you wish to comment on the enforcement actions of MSHA, you may call 1-888-REG-FAIR (1-888-734-3247), or write the Ombudsman at Small Business Administration, Office of the National Ombudsman, 409 3rd Street, SW  MC 2120, Washington, DC 20416. Please note, however, that your right to file a comment with the Ombudsman is in addition to any other rights you may have, including the right to contest citations and proposed penalties and obtain a hearing before the Federal Mine Safety and Health Review Commission.

# Attachment 4

Mine Citation/Order

**U.S. Department of Labor**
Mine Safety and Health Administration

◈

**Section I–Violation Data**

| 1. Date | Mo Da Yr 10/07/2010 | 2. Time (24 Hr. Clock) 0740 | | 3. Citation/ Order Number | 8249950 |
|---|---|---|---|---|---|

| 4. Served To | Chris Schemel - Consultant | 5. Operator Packer Engineering | |
|---|---|---|---|

| 6. Mine UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID 46-08436 | A1131 | (Contractor) |
|---|---|---|---|

8a. Written Notice (103g) ☐

**8. Condition or Practice**

Chris Schemel, a contract employee for the operator, has not received the required 40-hour new miner training prior to performing duties underground at the mine site.  Mr. Schemel has no previous mining experience.  Mr. Schemel is hereby ordered to withdraw from the mine until he has received the required training.  The Federal Mine Safety and Health Act of 1977 declares that an untrained miner is a hazard to himself and to others.

See Continuation Form (MSHA Form 7000-3a) ☐

| 9. Violation | A. Health ☐ Safety ☑ Other ☐ | B. Section of Act | C. Part/Section of Title 30 CFR | 48.5(a) |
|---|---|---|---|---|

**Section II–Inspector's Evaluation**

| 10. Gravity: | | | | | |
|---|---|---|---|---|---|
| A. Injury or Illness (has) (is): | No Likelihood ☐ | Unlikely ☐ | Reasonably Likely ☑ | Highly Likely ☐ | Occurred ☐ |
| B. Injury or Illness could reasonably be expected to be: | No Lost Workdays ☐ | Lost Workdays Or Restricted Duty ☑ | Permanently Disabling ☐ | Fatal ☐ | |
| C. Significant and Substantial: | Yes ☑ | No ☐ | | D. Number of Persons Affected: | 001 |

| 11. Negligence (check one) | A. None ☐ | B. Low ☐ | C. Moderate ☑ | D. High ☐ | E. Reckless Disregard ☐ |
|---|---|---|---|---|---|

| 12. Type of Action 104(g)(1) | 13. Type of Issuance (check one) | Citation ☐ | Order ☑ | Safeguard ☐ | Written Notice ☐ |
|---|---|---|---|---|---|

| 14. Initial Action | | | | E. Citation/ Order Number | F. Dated Mo Da Yr |
|---|---|---|---|---|---|
| A. Citation ☐ | B. Order ☐ | C. Safeguard ☐ | D. Written Notice ☐ | | |

| 15. Area or Equipment   Chris Schemel - Consultant. |
|---|

| 16. Termination Due | A. Date Mo Da Yr | B. Time (24 Hr. Clock) | |
|---|---|---|---|

**Section III–Termination Action**

17. Action to Terminate

| 18. Terminated | A. Date Mo Da Yr | B. Time (24 Hr. Clock) | |
|---|---|---|---|

**Section IV–Automated System Data**

| 19. Type of Inspection (activity code) E16 | 20. Event Number 4440348 | 21. Primary or Mill | |
|---|---|---|---|

| 22. Signature | | 23. AR Number 23908 |
|---|---|---|

MSHA Form 7000-3, Apr 06 (revised)    In accordance with the provisions of the Small Business Regulatory Enforcement Fairness Act of 1996, the Small Business Administration has established a National Small Business and Agriculture Regulatory Ombudsman and 10 Regional Fairness Boards to receive comments from small businesses about federal agency enforcement actions.  The Ombudsman annually evaluates enforcement activities and rates each agency's responsiveness to small business.  If you wish to comment on the enforcement actions of MSHA, you may call 1-888-REG-FAIR (1-888-734-3247), or write the Ombudsman at Small Business Administration, Office of the National Ombudsman, 409 3rd Street, SW  MC 2120, Washington, DC 20416.  Please note, however, that your right to file a comment with the Ombudsman is in addition to any other rights you may have, including the right to contest citations and proposed penalties and obtain a hearing before the Federal Mine Safety and Health Review Commission.

# Attachment 5



2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

October 8, 2010

Benjamin Wood
202-457-6685
bwood@pattonboggs.com

**VIA EMAIL AND US MAIL**

Mr. Derek J. Baxter, Esq.
Mr. Matthew N. Babington, Esq.
U.S. Department of Labor
Office of the Solicitor
Mine Safety and Health Division
1100 Wilson Blvd., 22nd Floor
Arlington, VA 22209

Re:     New Miner Training Citation No. 8249951 and Order No. 8249950
        Regarding Dr. Christopher Schemel

Dear Derek and Matt:

I write to follow up on our discussions yesterday concerning MSHA's extraordinary decision to deny underground access at the Upper Big Branch mine to Performance Coal Company's outside scientific consultant and investigator, Dr. Christopher Schemel, claiming that Dr. Schemel has not received the requisite forty hours of new coal miner training.  You explained yesterday that MSHA, and specifically Norman Page, maintains the position that the frequency of Dr. Schemel's investigation activities qualifies him as a "new miner" under the Mine Safety and Health Act.

Subsequent to our discussions, I received copies of an order and a citation MSHA issued in connection with this incident: a 104(g)(1) order to Dr. Schemel, ordering him "to withdraw from the mine until he has received the required training;" and a 104(a) citation to Performance for failing "to ensure that a contractor consultant working underground at the mine" had received the required new miner training.  In the agency's decades of accident investigations, we are unaware of a single prior instance in which MSHA cited an operator's consulting scientific expert for lacking new miner training.  Moreover, Dr. Schemel appears to have been unfairly singled out here, as MSHA has not required similar training for its own technical support personnel or for the out-of-state United Mine Workers of America ("UMWA") miners' representatives.

Even to a casual observer, the timing of this unprecedented exclusion of a scientific consultant to an accident investigation smacks of strategic abuse.  MSHA's forces and flames investigation team, which Dr. Schemel had accompanied underground for *four months*, had just announced the

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Derek Baxter, Esq.
Matthew Babington, Esq.
October 8, 2010
Page 2

previous day that it had completed its work. Accordingly, at the time he was cited Dr. Schemel was preparing to go underground with the investigation team from the West Virginia Office of Miners' Health, Safety and Training. This morning, we received Mr. Page's letter announcing that MSHA would modify the Section 103(k) Order to permit Performance to begin its own independent investigation in the UBB areas outby 83 break. Though we appreciate even this limited opportunity for Performance finally to have access to its mine, it is unconscionable that MSHA would take unprecedented and unlawful steps to exclude the company's lead scientific consultant on the eve of Performance's statutorily-mandated independent investigation. Unfortunately, this overreaching is consistent with the troubling pattern of MSHA consistently interfering with Performance's access to critical evidence in the UBB investigation.

Dr. Schemel's credentials as a renowned scientific consultant are impeccable, but more importantly solidify a common sense understanding that he is a scientist, *not* a miner. Dr. Schemel, a leading explosions expert with a Ph.D. in fire safety engineering from the University of Edinburgh, has previously served as an investigator on the 2001 West Pharmaceutical's explosion in Kinston, NC; the 2005 Buncefield Oil Storage explosion in Hertfordshire, England; the 2005 BP Texas City Refinery explosion in Texas City, Texas; the 2006 Sago Mine explosion in Sago, West Virginia; the 2009 ConAgra Foods explosion in Garner, NC; and the 2009 NDK Crystal explosion in Belvidere, IL. Dr. Schemel consulted on those investigations without incident, making his current exclusion all the more indefensible.

Even aside from the suspect timing and selective enforcement, and the questions of fundamental fairness and due process raised thereby, the purported legal basis for Dr. Schemel's exclusion is plainly flawed. The requirements for underground miner training and retraining are set forth in 30 C.F.R. Part 48. The regulations explicitly differentiate between the training requirements for any new miner who is working in an underground mine on production or construction or who is regularly exposed to mine hazards and the far less onerous hazard training requirements for a "scientific worker" working in the mine for a short-term purpose. *Compare* 30 C.F.R. § 48.2(a)(1) *with* 30 C.F.R. § 48.2(a)(2). A scientific worker subject to hazard training under Section 48.2(a)(2) is expressly excluded from the definition of miners required to complete the forty hours of new miner training under Section 48.2(a)(1). Dr. Schemel, who has received the hazard training that would be required of a scientific worker, is thus at a minimum excused from the regulatory requirement to obtain new miner training on that basis.

More fundamentally, however, Dr. Schemel is not "working" in the mine as a "miner" subject to the training requirements of *either* Sections 48.2(a)(1) or (a)(2). To date he merely has been accompanying MSHA and OMHST during their accident investigation. In fact, MSHA's own "Upper Big Branch Mine – South – Accident Investigation Protocols," issued May 24, 2010, explicitly state that the Performance representatives will only "accompany" the agencies' investigation teams. That investigation activity does not constitute "working" in a mine so as to

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Derek Baxter, Esq.
Matthew Babington, Esq.
October 8, 2010
Page 3

trigger the Part 48 training requirements in any way. In a 2009 decision issued under Part 46, an analog to Part 48, the Federal Mine Safety and Health Review Commission squarely addressed whether a mine operator's representative must have received new miner training in order to accompany an MSHA inspector during the physical inspection of any coal or other mine. *See Secretary of Labor, Mine Safety and Health Administration v. SCP Investments, LLC,* 31 FMSHRC 821, 16 MSHN 306 (Aug. 10, 2009). In *SCP,* upon learning that a quarry owner and his employees were not trained in accordance with the requirements in 30 C.F.R. Part 46, MSHA issued several training citations and orders, ordered all employees out of the pit, and refused to permit the owner to accompany the inspector during the inspection due to alleged lack of training. In the legal challenge to those orders and citations, the Commission concluded definitively:

> Section 46.5 is not a proper basis for excluding Mr. Stone. Section 46.5 specifically refers to training which a new miner must have before he or she can "work" at a mine. ... [B]y its terms section 46.5 does not relate to inspections of the mine. This conclusion is supported by our case law, in which we have held that a non-miner may be a representative of miners and participate in an inspection under section 103(f). *See, e.g., Emery Mining Corp.,* 10 FMSHRC 276 (Mar. 1988), *aff'd in pertinent part and rev'd on other grounds sub. nom. Utah Power & Light Co. v. Sec'y of Labor,* 897 F.2d 447 (10th Cir. 1990).

31 FMSHRC at 824. Under this Commission precedent, accompanying MSHA during an inspection or investigation does not constitute "work" for purposes of the regulatory training requirements. As with the representatives in *SCP,* in accompanying MSHA and OMHST in their accident investigation Dr. Schemel has not been "working" in UBB and thus is not required to receive new miner training under 30 C.F.R. § 48.2(a)(1).

In consideration of the foregoing, Performance respectfully requests that MSHA vacate immediately the 104(g) order issued to Dr. Schemel and the 104(a) citation issued to Performance yesterday. The order and citation are legally invalid, issued for an improper purpose, and threaten Performance's constitutionally guaranteed access to evidence.

Regards,

Benjamin D. Wood

PATTON BOGGS LLP
ATTORNEYS AT LAW

Derek Baxter, Esq.
Matthew Babington, Esq.
October 8, 2010
Page 4

cc:     Robert D. Luskin, Esq.
        Patrick J. Slevin, Esq.
        Peter S. Gould, Esq.

# Attachment 6

Mine Citation/Order

U.S. Department of Labor
Mine Safety and Health Administration

**Section I--Violation Data**

| 1. Date   Mo Da  Yr | 2. Time (24 Hr. Clock) | | 3. Citation/Order Number   8405518 |
|---|---|---|---|
| 02/16/2011 | 2000 | | |

| 4. Served To | 5. Operator |
|---|---|
| Chris Prater Engineer | DQ FIRE & EXPLOSION CONSULTANTS, INC. |

| 6. Mine | 7. Mine ID   46-08436   A1258   (Contractor) |
|---|---|
| UPPER BIG BRANCH MINE-SOUTH | 8a. Written Notice (103g) ☐ |

8. Condition or Practice

This order is issued to protect the health and safety of miners.  Pedro Reszka has demonstrated that he can not recognize hazards in the work areas of the underground mine.  During MSHA representative's travels with Mr. Reszka, he has been warned of roof and other hazards repeatedly. Many times Mr. Reszka has shown an unwillingness to comply with warnings and requests. He continues to ignore ribboned off areas and loose roof even after the areas of loose roof have been pointed out to him by experienced miners several times.  Records indicate that Mr. Reszka has received comprehensive training, it has been observed that the training has been ineffective for Mr. Reszka to recognize hazards and the avoidance of such hazards .  He is hereby removed from all work areas of the mine until Mr. Reszka has been retrained according to the operator's approved training

See Continuation Form (MSHA Form 7000-3a) ☑

| 9. Violation | A. Health ☐  Safety ☑  Other ☐ | B. Section of Act | 104(g)(1) | C. Part/Section of Title 30 CFR |
|---|---|---|---|---|

**Section II--Inspector's Evaluation**

10. Gravity:

A. Injury or Illness (has) (is):   No Likelihood ☑   Unlikely ☐   Reasonably Likely ☐   Highly Likely ☐   Occurred ☐

B. Injury or Illness could reasonably be expected to be:   No Lost Workdays ☑   Lost Workdays Or Restricted Duty ☐   Permanently Disabling ☐   Fatal ☐

C. Significant and Substantial:   Yes ☐   No ☑     D. Number of Persons Affected:   001

11. Negligence (check one)   A. None ☐   B. Low ☐   C. Moderate ☑   D. High ☐   E. Reckless Disregard ☐

| 12. Type of Action | 104(g)(1) | 13. Type of Issuance (check one)   Citation ☐   Order ☑   Safeguard ☐   Written Notice ☐ | F. Dated  Mo Da  Yr |
|---|---|---|---|

| 14. Initial Action | A. Citation ☐   B. Order ☐   C. Safeguard ☐   D. Written Notice ☐ | E. Citation/Order Number |
|---|---|---|

15. Area or Equipment   No area or equipment of the mine is effected.

**Section III--Termination Action**

| 16. Termination Due | A. Date  Mo Da  Yr | B. Time (24 Hr. Clock) |
|---|---|---|

17. Action to Terminate

| 18. Terminated | A. Date  Mo Da  Yr | B. Time (24 Hr. Clock |
|---|---|---|

**Section IV--Automated System Data**

| 19. Type of Inspection (activity code)   E16 | 20. Event Number   4440348 | 21. Primary or Mill |
|---|---|---|

| 22. Signature   Randall Lewis | | 23. AR Number   24262 |
|---|---|---|

MSHA Form 7000-3, Apr 08 (revised)   In accordance with the provisions of the Small Business Regulatory Enforcement Fairness Act of 1996, the Small Business Administration has established a National Small Business and Agriculture Regulatory Ombudsman and 10 Regional Fairness Boards to receive comments from small businesses about federal agency enforcement actions.  The Ombudsman annually evaluates enforcement activities and rates each agency's responsiveness to small business.  If you wish to comment on the enforcement actions of MSHA, you may call 1-888-REG-FAIR (1-888-734-3247), or write the Ombudsman at Small Business Administration, Office of the National Ombudsman, 409 3rd Street, SW  MC 2120, Washington, DC 20416.  Please note, however, that your right to file a comment with the Ombudsman is in addition to any other rights you may have, including the right to contest citations and proposed penalties and obtain a hearing before the Federal Mine Safety and Health Review Commission.

| Mine Citation/Order<br>Continuation | U.S. Department of Labor<br>Mine Safety and Health Administration | |
|---|---|---|

**Section I--Subsequent Action/Continuation Data**

| 1. Subsequent Action | 1a. Continuation ☑ | 2. Dated<br>(Original Issue) | Mo  Da  Yr<br>02/16/2011 | 3. Citation/<br>Order Number 8405518 |
|---|---|---|---|---|

| 4. Served To<br>Chris Prater Engineer | 5. Operator<br>DQ FIRE & EXPLOSION CONSULTANTS, INC. | (Contractor) |
|---|---|---|
| 6. Mine<br>UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID<br>46-08436 | A1258 |

**Section II--Justification for Action**

Continuation of 8. Condition or Practice

plan and he has demonstrated to the operator that all training received has been effective. Management of Performance Coal Company shall provide MSHA with a written statement that the training has been conducted and is effective. MSHA shall be notified when the traning is to be conducted to have the opportunity to monitor the training.

See Continuation Form ☐

**Section III--Subsequent Action Taken**

| 8. Extended To | A. Date | Mo  Da  Yr | B. Time (24 Hr. Clock) | ☐ C. Vacated | ☐ D. Terminated | ☐ E. Modified |
|---|---|---|---|---|---|---|

**Section IV--Inspection Data**

| 9. Type of Inspection  E16 | 10. Event Number  4440348 | | |
|---|---|---|---|
| 11. Signature<br>Randall Lewis | AR Number<br>24262 | 12. Date  Mo  Da  Yr<br>02/16/2011 | 13. Time (24 Hr. Clock)<br>2000 |

MSHA Form 7000-3a, Mar 85 (revised)

| Mine Citation/Order Continuation | | U.S. Department of Labor Mine Safety and Health Administration | | |

**Section I--Subsequent Action/Continuation Data**

| 1. Subsequent Action ☑ 1a. Continuation ☐ | 2. Dated (Original Issue) Mo Da Yr 02/16/2011 | 3. Citation/Order Number 8405518 - 01 |

| 4. Served To Chris Prater Engineer | 5. Operator DQ FIRE & EXPLOSION CONSULTANTS, INC. (Contractor) A1258 |
| 6. Mine UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID 46-08436 |

**Section II--Justification for Action**

Re-training has now been conducted with Pedro Reszka on 2-18-2011. The training was 4 hours of class room and 1 hour underground.

See Continuation Form ☐

**Section III--Subsequent Action Taken**

| 8. Extended To A. Date Mo Da Yr | B. Time (24 Hr. Clock) | ☐ C. Vacated ☑ D. Terminated ☐ E. Modified |

**Section IV--Inspection Data**

| 9. Type of Inspection E16 | 10. Event Number 4440348 | |
| 11. Signature Randall Lewis | AR Number 24262 | 12. Date Mo Da Yr 02/22/2011 | 13. Time (24 Hr. Clock) 0720 |

MHA Form 7000-3a, Mar 85 (revised)

| Mine Citation/Order Continuation | U.S. Department of Labor Mine Safety and Health Administration | |
|---|---|---|

**Section I.--Subsequent Action/Continuation Data**

| 1. Subsequent Action ☑  1a. Continuation ☐ | 2. Dated (Original Issue)  Mo Da Yr  02/16/2011 | 3. Citation/ Order Number  8405518 - 02 |
|---|---|---|

| 4. Served To  Chris Prater Engineer | 5. Operator  DQ FIRE & EXPLOSION CONSULTANTS, INC. | |
|---|---|---|

| 6. Mine  UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID  46-08436 | (Contractor)  A1258 |
|---|---|---|

**Section II.--Justification for Action**

After consultation with SOL. It has been determined that this order should be vacated.

See Continuation Form ☐

**Section III.--Subsequent Action Taken**

| 8. Extended To  A. Date  Mo Da Yr | B. Time (24 Hr. Clock) | ☑ C. Vacated  ☐ D. Terminated  ☐ E. Modified |
|---|---|---|

**Section IV.--Inspection Data**

| 9. Type of Inspection  E16 | 10. Event Number  4440348 | | |
|---|---|---|---|

| 11. Signature  Randall Lewis | AR Number  24262 | 12. Date  Mo Da Yr  02/22/2011 | 13. Time (24 Hr. Clock)  2135 |
|---|---|---|---|

MSHA Form 7000-3a, Mar 85 (revised)

# Attachment 7

| Mine Citation/Order | U.S. Department of Labor |
|---|---|
| | Mine Safety and Health Administration |

**Section I--Violation Data**

| 1. Date    Mo Da Yr<br>02/16/2011 | 2. Time (24 Hr. Clock)<br>2030 | 3. Citation/<br>Order Number   8405519 |
|---|---|---|

| 4. Se   To<br>Chris Prater Engineer | 5. Operator<br>PERFORMANCE COAL COMPANY |
|---|---|

| 6. Mine<br>UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID   46-08436 | (Contractor)<br>8a. Written Notice (103g) ☐ |
|---|---|---|

**8. Condition or Practice**

Pedro Reszka has not been properly trained. Pedro Reszka has demonstrated that he can not recognize hazards in the work areas of the underground mine. During MSHA representative's travels with Mr. Reszka, he has been warned of roof and other hazards repeatedly. Many times Mr. Reszka has shown an unwillingness to comply with warnings and requests. He continues to ignore ribboned off areas and loose roof even after the areas of loose roof have been pointed out to him by experienced miners several times. Records indicate that Mr. Reszka has received comprehensive training, it has been observed that the training has been ineffective for Mr. Reszka to recognize hazards and the avoidance of such hazards . He is hereby removed from all work areas of the mine until Mr. Reszka has been retrained according to the operator's approved training plan and he has

See Continuation Form (MSHA Form 7000-3a) ☑

| 9. Violation | A. Health ☐<br>Safety ☑<br>Other ☐ | B. Section<br>of Act | C. Part/Section of<br>Title 30 CFR    48.5(b)(9) |
|---|---|---|---|

**Section II--Inspector's Evaluation**

**10. Gravity:**

| A. Injury or Illness (has) (is): | No Likelihood ☐ | Unlikely ☐ | Reasonably Likely ☑ | Highly Likely ☐ | Occurred ☐ |
|---|---|---|---|---|---|

| B. Injury or illness could rea-<br>~~ably be expected to be:~~ | No Lost Workdays ☐ | Lost Workdays Or Restricted Duty ☐ | | Permanently Disabling ☑ | Fatal ☐ |
|---|---|---|---|---|---|

| C. Significant and Substantial: | Yes ☑ | No ☐ | | D. Number of Persons Affected:   001 |
|---|---|---|---|---|

| 11. Negligence (check one) | A. None ☐ | B. Low ☐ | C. Moderate ☑ | D. High ☐ | E. Reckless Disregard ☐ |
|---|---|---|---|---|---|

| 12. Type of Action   104(a) | 13. Type of Issuance (check one)   Citation ☑  Order ☐  Safeguard ☐  Written Notice ☐ |
|---|---|

| 14. Initial Action<br>A. Citation ☐  B. Order ☐  C. Safeguard ☐  D. Written Notice ☐ | E. Citation/<br>Order Number | F. Dated   Mo Da Yr |
|---|---|---|

**15. Area or Equipment**

| 16. Termination Due | A. Date   Mo Da Yr<br>02/17/2011 | B. Time (24 Hr. Clock)   0400 |
|---|---|---|

**Section III--Termination Action**

**17. Action to Terminate**

| 18. Terminated | A. Date   Mo Da Yr | B. Time (24 Hr. Clock) |
|---|---|---|

**Section IV--Automated System Data**

| 19. Type of Inspection<br>(activity code)   E16 | 20. Event Number   4440348 | 21. Primary or Mill |
|---|---|---|

| | | 23. AR Number   24262 |
|---|---|---|

| 22. Signature   Randall Lewis | |
|---|---|

MSH    ..m 7000-3, Apr 08 (revised)    In accordance with the provisions of the Small Business Regulatory Enforcement Fairness Act of 1996, the Small Business Administration has estab...  ..a National Small Business and Agriculture Regulatory Ombudsman and 10 Regional Fairness Boards to receive comments from small businesses about federal agency enforce..ent actions. The Ombudsman annually evaluates enforcement activities and rates each agency's responsiveness to small business. If you wish to comment on the enforcement actions of MSHA, you may call 1-888-REG-FAIR (1-888-734-3247), or write the Ombudsman at Small Business Administration, Office of the National Ombudsman, 409 3rd Street, SW  MC 2120, Washington, DC 20416. Please note, however, that your right to file a comment with the Ombudsman is in addition to any other rights you may have, including the right to contest citations and proposed penalties and obtain a hearing before the Federal Mine Safety and Health Review Commission.

| Mine Citation/Order<br>Continuation | U.S. Department of Labor<br>Mine Safety and Health Administration | ◈ |
|---|---|---|

**Section I--Subsequent Action/Continuation Data**

| 1. Subsequent Action 1a. Continuation ☑ | 2. Dated<br>(Original Issue) | Mo   Da   Yr<br>02/16/2011 | 3. Citation/<br>Order Number   8405519 |
|---|---|---|---|

| 4. Se___ To<br>Chris Prater Engineer | 5. Operator<br>PERFORMANCE COAL COMPANY                    (Contractor) |
|---|---|
| 6. Mine<br>UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID<br>46-08436 |

**Section II--Justification for Action**

**Continuation of 8. Condition or Practice**

demonstrated to the operator that all training received has been effective.
Management of Performance Coal Company shall provide MSHA with a written
statement that the training has been conducted and is effective.

See Continuation Form ☐

**Section III--Subsequent Action Taken**

| 8. Extended To   A. Date | Mo   Da   Yr | B. Time (24 Hr. Clock) | ☐ C. Vacated | ☐ D. Terminated | ☐ E. Modified |
|---|---|---|---|---|---|

**Section IV--Inspection Data**

| 9. Type of Inspection   E16 | 10. Event Number   4440348 | | |
|---|---|---|---|
| 11. ___ature<br>Randall Lewis | AR Number<br>24262 | 12. Date   Mo   Da   Yr<br>02/16/2011 | 13. Time (24 Hr. Clock)<br>2030 |

MSHA Form 7000-3a, Mar 85 (revised)

| Mine Citation/Order<br>Continuation | U.S. Department of Labor<br>Mine Safety and Health Administration | ◈ |
|---|---|---|

**Section I--Subsequent Action/Continuation Data**

| 1. ☐ Subsequent Action  1a. Continuation ☑ | 2. Dated<br>(Original Issue) | Mo  Da  Yr<br>02/16/2011 | 3. Citation/<br>Order Number  8405519 - 01 |
|---|---|---|---|

| 4. Served To<br>Chris Prater Engineer | 5. Operator<br>PERFORMANCE COAL COMPANY          (Contractor) |
|---|---|
| 6. Mine<br>UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID<br>46-08436 |

**Section II--Justification for Action**

Re-training has now been conducted with Pedro Reszka on 2-18-2011. The
training was 4 hours of class room and 1 hour underground.

See Continuation Form ☐

**Section III--Subsequent Action Taken**

| 8. Extended To  A. Date  Mo  Da  Yr | B. Time (24 Hr. Clock) | ☐ C. Vacated | ☑ D. Terminated | ☐ E. Modified |
|---|---|---|---|---|

**Section IV--Inspection Data**

| 9. Type of Inspection  E16 | 10. Event Number  4440348 | | |
|---|---|---|---|
| 11. Signature<br>Randall Lewis | AR Number<br>24262 | 12. Date  Mo  Da  Yr<br>02/22/2011 | 13. Time (24 Hr. Clock)<br>0715 |

MHA Form 7000-3a, Mar 85 (revised)

| Mine Citation/Order Continuation | U.S. Department of Labor Mine Safety and Health Administration | |
|---|---|---|

**Section I--Subsequent Action/Continuation Data**

| Subsequent Action 1a. Continuation ☑ ☐ | 2. Dated (Original Issue)  Mo 02 Da 16 Yr 2011 | 3. Citation/ Order Number 8405519 - 02 |
|---|---|---|

| 4. Served To Chris Prater Engineer | 5. Operator PERFORMANCE COAL COMPANY | (Contractor) |
|---|---|---|

| 6. Mine UPPER BIG BRANCH MINE-SOUTH | 7. Mine ID 46-08436 | |
|---|---|---|

**Section II--Justification for Action**

After consultation with SOL. It has been determined that this citation should be vacated.

See Continuation Form ☐

**Section III--Subsequent Action Taken**

| 8. Extended To   A. Date  Mo   Da   Yr | B. Time (24 Hr. Clock) | ☑ C. Vacated   ☐ D. Terminated   ☐ E. Modified |
|---|---|---|

**Section IV--Inspection Data**

| 9. Type of Inspection  E16 | 10. Event Number  4440348 | |
|---|---|---|

| 11. Signature ▪▪▪ndall Lewis | AR Number 24262 | 12. Date  Mo   Da   Yr  02/22/2011 | 13. Time (24 Hr. Clock) 2130 |
|---|---|---|---|

▪▪SHA Form 7000-3a, Mar 85 (revised)

# Attachment 8

**U.S. Department of Labor**                    Mine Safety and Health Administration
                                                1301 Airport Road
                                                Room D-200
                                                Beaver, West Virginia 25813-9426

BY FAX

April 1, 2011

Chris Prater
Performance Coal Company
P.O. Box 69
Naoma, WV 25140
(304) 854-3412

Dr. Schemel
DQ Fire and Explosion Consultants, Inc.
c/o
Performance Coal Company
P.O. Box 69
Naoma, WV 25140
(304) 854-3412

Re:    Upper Big Branch Mine
       Conference on 104(a) Citation No. 8405519 and 104(g) Order No. 8405518

Dear Mr. Prater and Dr. Schemel:

Please be advised that the miners' representative, the United Mine Workers of America, wishes to discuss Section 104(a) Citation No. 8405519 and Order No. 8405518. We have scheduled this discussion to be held at a conference on Wed., April 6, 2011 at 9 a.m. at the National Mine Academy, room C-121. Two persons from each of your respective groups may attend if desired.

Your attention to the above is appreciated.

Sincerely,

Norman Page
Chief Investigator

cc:    Max Kennedy (304-346-0353)