# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PERFORMANCE COAL COMPANY and ALLEN GUTHRIE & THOMAS, PLLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 10-1698 (RJL) |
| v. | ) ) | |
| U.S. DEPARTMENT OF LABOR and MINE SAFTEY AND HEALTH ADMINISTRATION, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION
(March ⁊, 2012) [#28, #34, #42, #43]

Plaintiffs Performance Coal Company ("Performance Coal") and Allen Guthrie &

Thomas, PLLC (collectively, "plaintiffs") bring this action against the Department of

Labor ("DOL") and the Mine Safety and Health Administration ("MSHA") (collectively,

"defendants") for failure to disclose information pursuant to the Freedom of Information

Act ("FOIA").  Plaintiffs seek material to determine comprehensively the cause of a

catastrophic accident at Performance Coal's Upper Big Branch Mine and to prevent a

recurrence.  Before this Court are defendants' Motion for Summary Judgment in Part,

defendants' Motion for Summary Judgment in Part Regarding the Comprehensive Mine

Request, and plaintiffs' Cross-Motions for Partial Summary Judgment.  After due

consideration of the parties' pleadings, the relevant law, and the entire record herein,

defendants' motions are GRANTED and plaintiffs' motions are DENIED.

## BACKGROUND

Plaintiff Performance Coal is a corporation that operates the Upper Big Branch Mine ("the Mine"), which is located in Raleigh County, West Virginia. Amended Compl. ("Compl.") ¶ 4, Dec. 27, 2010. Massey Energy Company ("Massey") owns the Mine. *See* Declaration of Joseph J. Plick ("Plick Decl.") ¶ 4, Ex. 11 to Defs.' Mot. for Summ. J. ("Defs.' Mot."), May 9, 2011. Plaintiff Allen Guthrie & Thomas, PLLC is a law firm located in Charleston, West Virginia that represents Performance Coal and submitted FOIA requests on behalf of Performance Coal in connection with that representation. Compl. ¶ 5.

On April 5, 2010, an explosion occurred at the Mine killing twenty-nine miners and injuring two others. Plick Decl. ¶ 4. Plaintiffs submitted seven relevant FOIA requests to MSHA requesting information related to the explosion. Compl. ¶ 14; Ex. A, F, I, M, O, Q, T to Compl.

On May 11, 2010, plaintiffs submitted a FOIA request to MSHA seeking records relating to rock dust samples taken from the Mine on March 15, 2010 (the "Rock Dust Request"). Ex. A to Compl. Defendants released all responsive material to plaintiffs, with the exception of one page, which DOL withheld pursuant to FOIA Exemption 7(C). Supplemental Declaration of Lanesia Washington ("Supp. Washington Decl.") at ¶ 6, Ex. 1-B to Defs.' Opp'n to Pls.' Cross-Mot. for Summ. J. ("Defs.' Opp'n"), Oct. 5, 2011; Ex. A-1 to Defs.' Opp'n.

On May 11, 2010, plaintiffs also made a comprehensive request (the "Comprehensive Request") seeking all documents, including electronic correspondence,

2

photographs, calendar entries, recordings, and any other materials related to the Mine for the time period of January 1, 2009 to April 5, 2010. Ex. F to Compl. MSHA released 5466 pages and withheld 237 pages in part pursuant to FOIA Exemptions 5 and 7(C). Supp. Washington Decl. ¶ 6.

Additionally, on May 11, 2010, plaintiffs submitted a FOIA request to MSHA seeking records relating to submissions to the Mine Plan Approval System ("MPAS") (the "MPAS Request"). Compl. ¶ 28; Ex. F to Compl. MSHA released all responsive materials with the exception of one page in full, which it withheld pursuant to FOIA Exemption 7(A). *See* Declaration of Lanesia Washington ("Washington Decl.") ¶ 21, Ex. 1 to Defs.' Mot., May 6, 2011; Ex. 8 to Defs.' Mot.; Ex. 13 to Defs.' Mot.

On June 14, 2010, plaintiffs submitted a FOIA request to defendants seeking records relating to "methane outbursts" or other unplanned accidents that took place on or about July 3, 2003 and February 18, 2004 (the "Methane Outburst Request"). Ex. I to Compl. MSHA released all documents pertaining to the request, excluding the 106 pages MSHA withheld in part pursuant to FOIA Exemption 7(C). *See* Defs.' Opp'n at 3; Ex. C-1 to Defs.'s Opp'n; Supp. Washington Decl. ¶ 6; Ex. C to Defs.' Mot.

On June 23, 2010, plaintiffs submitted a FOIA request to MSHA seeking records relating to a MSHA investigation into a January 4, 1997 methane/air explosion (the "Methane/Air Explosion Request"). Ex. M to Compl. Defendants released all responsive documents pertaining to the request, with the exception of six pages that MSHA withheld in part pursuant to FOIA Exemption 7(C). Defs.' Opp'n at 4; Ex. D-1 to Defs.'s Opp'n; Supp. Washington Decl. ¶ 6; Washington Decl. ¶ 31.

3

On June 23, 2010, plaintiffs submitted a FOIA requests seeking records relating to bottle samples taken at the Mine (the "Bottle Samples Request"). Ex. O to Compl. Defendants released all documents pertaining to the request, except for 168 pages, which MSHA withheld in part pursuant to FOIA exemption 7(C). Defs.' Opp'n at 4; Ex. E-1 to Defs.' Opp'n; Supp. Washington Decl. ¶ 6; Washington Decl. ¶ 40.

On August 18, 2010, plaintiffs submitted a FOIA request seeking records related to a memorandum (the "Wagner Memorandum") provided to the media by MSHA on or about July 20, 2010 (the "Wagner Request"). Ex. Q to Compl. On January 28, 2011, plaintiffs narrowed the scope of the request to records relating to communications between MSHA and DOL about topics discussed in the Wagner Memorandum. Ex. 5 to Defs.' Mot. On April 8, 2011, DOL released thirty-eight pages in full, withheld fifty pages in part, and withheld 284 pages in full, pursuant to FOIA Exemptions 5 and 6. *See* Plick Decl. ¶ 17. On September 30, 2011, DOL released an additional 97 pages in full and three pages in part, but continued to withhold the remaining pages in full pursuant to FOIA Exemption 5. *See* Supplemental Declaration of Joseph J. Plick ("Supp. Plick Decl.") ¶¶ 7-9, Ex. 9 to Defs.' Opp'n; Ex. G-1 to Defs.' Opp'n.

On November 9, 2010, plaintiffs submitted a FOIA request to MSHA seeking a "timeline prepared by MSHA of the events at Performance Coal Company's" mine and "a transcript of or notes about an interview of Bob Hardman with investigators" (the "Hardman Request"). Ex. T to Compl. On April 8, 2011, MSHA released in part a fifteen-page handwritten log of events that occurred at the Mine on April 5, 2010, pursuant to FOIA Exemption 7(C), and withheld 239 additional pages in full pursuant to

4

FOIA Exemptions 7(A) and 7(C). Ex. G to Defs.' Mot.; Washington Decl. ¶ 46; Supp. Washington Decl. ¶ 6.

On December 27, 2010, plaintiffs filed an amended complaint against defendants, alleging they had failed to comply with FOIA. Docket Entry 15. On May 9, 2011, defendants filed a motion for summary judgment in part contending that they fulfilled their FOIA obligations. Def.'s Mot. at 2. On June 9, 2011, plaintiffs filed a cross-motion for partial summary judgment, asserting that defendants have not shown that they conducted adequate searches for responsive documents, did not reasonably segregate non-exempt information from statutorily exempt information, and did not establish that any of the exemptions claimed were appropriate. *See* Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n") at 3, June 9, 2011. On July 15, 2011, defendants filed a motion for summary judgment in part regarding the comprehensive mine request, contending that it fulfilled its FOIA obligations. *See* Defs.' Mot. for Summ. J. (Comprehensive Mine Request) ("Defs.' CMR Mot.") at 2, July 15, 2011. On August 22, 2011, plaintiffs filed a cross-motion for partial summary judgment, asserting that defendants have not shown that they conducted adequate searches for responsive documents, did not reasonably segregate non-exempt information from statutorily exempt information, and did not establish that any of the exemptions claimed were appropriate. *See* Pl.'s Opp'n to Defs.' CMR Mot. ("Pls.' CMR Opp'n") at 2, August 22, 2011. For all the reasons set forth below, I disagree and GRANT summary judgment in favor of defendants.

## ANALYSIS

I.     *Summary Judgment Standard*

"When assessing a motion for summary judgment under FOIA, the Court shall

determine the matter *de novo.*" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598

F. Supp. 2d 93, 95 (D.D.C. 2009) (citing 5 U.S.C. § 552(a)(4)(B)).  Summary judgment is

appropriate when the record demonstrates that there is no genuine issue of material fact in

dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  The moving party bears the burden, and the court will draw "all justifiable

inferences" in the favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).  Nevertheless, the non-moving party "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that

there is a genuine issue for trial."  *Id.* at 248 (internal quotations omitted).  Factual

assertions in the moving party's affidavits may be accepted as true unless the opposing

party submits its own affidavits, declarations, or documentary evidence to the contrary.

*Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA action, an agency must "demonstrate beyond material doubt that its

search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena*

*v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*,

897 F.2d 540, 542 (D.C. Cir. 1990)).  To meet its burden, the agency may submit

affidavits or declarations that explain in reasonable detail the scope and method of the

agency's search, which, in the absence of contrary evidence, are sufficient to demonstrate

an agency's compliance with FOIA.  *See Perry v. Block*, 684 F.2d 121, 126-27 (D.C. Cir.

6

1982) (per curiam).

Further, with respect to an agency's non-disclosure decisions, the court may rely on affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (internal quotations omitted).

II.   *Adequacy of the Searches*

An agency's search is adequate if its methods are reasonably calculated to locate records responsive to a FOIA request. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency need not search every records system so long as it conducts "a reasonable search tailored to the nature of a particular request." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Indeed, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (internal citation omitted); *see Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003).

7

Here, the procedures described in the Washington Declarations and Plick Declaration explain in reasonable detail the scope and method of the DOL's and MSHA's searches, and sufficiently demonstrate their compliance with FOIA's search requirements. *See* Washington Decl. ¶¶ 9-47; Plick Decl. ¶¶ 11-16; *Campbell*, 164 F.3d at 28; *Perry*, 684 F.2d at 127. MSHA has twelve Coal Safety and Health District offices and six metal/nonmetal district offices throughout the country. Washington Decl. ¶ 9. District 4 regulates mines within the southern portion of West Virginia, which includes the Mine. *Id.* ¶ 10. The Mt. Hope National Air and Dust Laboratory ("National Lab") analyzes dust and air samples from all of the MSHA's district offices. *Id.* District 4 and the National Lab were identified as the offices that maintained potentially responsive records, and both searched their electronic and paper files for responsive records related to plaintiffs' FOIA requests. *Id.* ¶¶ 10, 13, 17-21, 24-26, 30, 34-38, 42-44, 45; Supp. Washington Decl. ¶¶ 19-22. Additionally, District 4 and the National Lab collected responsive documents that were located in storage at the National Archives and Records Administration. Washington Decl. ¶¶ 22-25, 36-39. The collected pages were reviewed, processed and disclosed, when possible, to plaintiffs. Washington Decl. ¶¶ 14, 21, 26-27, 31, 40, 46; Supp. Washington Decl. ¶¶ 23-25.

Further, specifically with respect to the MPAS Request and Comprehensive Request, MSHA instructed its Program Evaluation and Information Resources ("PEIR") Office, which is responsible for all of MSHA's enterprise-wide automated information systems, data communications, and automatic data processing equipment, to conduct a search of the MPAS electronic database—a system that keeps track of all mine plan

8

information submitted by mine operators, actions taken, and approval or denial dates. Washington Decl. ¶¶ 9, 16, 18. All of the responsive material was processed and disclosed, when possible, to plaintiffs. *Id.* ¶¶ 19-21.

Lastly, with respect to the Wagner Request, DOL, MSHA, and the Offices of the Secretary, the Solicitor, and Public Affairs searched their electronic and paper files for responsive records. Plick Decl. ¶¶ 12-15. All responsive documents were then processed and released, when possible, to plaintiffs. *Id.* ¶¶ 16-17.

Because DOL and MSHA searched electronic and paper records reasonably likely to contain responsive documents, the searches were reasonably tailored to plaintiffs' requests and therefore adequate. *See Campbell*, 164 F.3d at 28.

III.    *Segregability*

An agency claiming that a document is exempt under FOIA must, after excising the exempted information, release any reasonably segregable information unless the non-exempt information is inextricably intertwined with the exempt information. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999).

Here, the DOL and MSHA released all reasonably segregable non-exempt material. As the Washington Declaration adequately states, "[a]ll reasonably segregable portions of the records were released to plaintiffs after the appropriate exemptions were applied to the documents," *see* Washington Decl. ¶¶ 15, 28, 32, 41, 47; Supp. Washington Decl. ¶ 25, except where "any attempt at segregating the information would provide little or no information value, because the material is inextricably intertwined,"

*see* Washington Decl. ¶ 50.[1]  In the absence of contrary evidence or specific cites to

potentially unsegregated documents, the declarations are afforded the presumption of

good faith. *See SafeCard Servs.*, 926 F.2d at 1200. Therefore, all reasonably segregable

non-exempt material has been released.

### IV.   FOIA Exemptions

Under the law of our Circuit, "[i]f an agency's statements supporting exemption

contain reasonable specificity of detail as to demonstrate that the withheld information

logically falls within the claimed exemption and evidence in the record does not suggest

otherwise, . . . the court should not conduct a more detailed inquiry." *Dep't of State*

*Larson*, 565 F.3d 857, 865 (D.C. Cir. 2009). Here, plaintiffs challenge the defendants'

invocation of FOIA Exemptions 5, 7(A), and 7(C). Plaintiffs fail, however, to put forth

any evidence to counter the detailed explanations regarding these claimed exemptions.

Therefore, based on the *Vaughn* indices, Washington Declaration, Supplemental

Washington Declaration, and Plick Declaration, this Court finds, for the following

reasons, that defendants' justifications for invoking these FOIA exemptions are sufficient

under the law of our Circuit. *See id.* at 862.

### A. FOIA Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify for this

---

[1]  With respect to the Wagner request, all of the withheld documents were withheld as
work product pursuant to FOIA Exemption 5, and therefore "segregability is not
required." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).

exemption, a document "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Courts have incorporated certain civil discovery privileges into Exemption 5, such as attorney-work product, attorney-client privilege, and "deliberative process" privilege. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-49 (1975); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). Here, defendants assert Exemption 5 to withhold records relating to communications between MSHA and DOL about topics discussed in the Wagner Memorandum,[2] *see* Supp. Plick Decl. ¶¶ 7-9; Ex. G-1 to Defs.' Opp'n, and documents relating to the Comprehensive Request. *See* Declaration of Lanesia Washington Regarding Comprehensive Request ("Comprehensive Washington Decl.") ¶¶ 32, 35, Ex. 1 to Defs.' CMR Mot., July 15, 2011.

### 1. Attorney-Work Product

The attorney-work product doctrine protects records prepared by or for an attorney in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947); *Coastal*

---

[2] Plaintiffs contend that Exemption 5 does not apply because defendants shared a July 2011 press release relating to the Wagner Memorandum with the press and therefore waived privilege as to documents relating to the Wagner Memorandum. *See* Pls.' Opp'n at 3-5. Defendants, however, released all documents similar in form and content to the July 2011 press release to plaintiffs. *See* Defs.' Opp'n at 20. The documents withheld by defendants do not match the information in the July 2011 press release nor were they ever disclosed to the public. *See id.*; Ex. G to Defs.' Mot. While public disclosure of documents may lead to the waiver of the FOIA exemption, the plaintiff bears the initial burden of showing that the requested information: (1) is as specific as the information previously disclosed; (2) matches the information previously disclosed; and (3) was made public through an official and documented disclosure. *See Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). Plaintiffs, however, have failed to meet this burden.

*States Gas Corp.*, 617 F.2d at 864. The withheld materials listed in the Wagner *Vaughn*

Index were prepared by the Solicitor of Labor, the top attorney at DOL, "in

contemplation of litigation that would result from investigations being conducted by DOJ

and MSHA into the April 5, 2010 explosion." Plick Decl. ¶¶ 22-24. As clearly stated in

the Plick Declaration, the materials were withheld to protect records reflecting "mental

impressions, opinions, legal theories, notes, draft documents, that was either prepared by

the Solicitor of Labor, an agency attorney, or DOL officials and subordinates acting on

the Solicitor's behalf." *Id.* ¶ 22; *see* Ex. G to Defs.' Mot. Thus, defendants properly

withheld these materials pursuant to Exemption 5.

### 2. *Attorney-Client Privilege*

The attorney-client privilege exempts from disclosure confidential

communications between a government attorney and a client agency that has sought the

attorney's advice. *Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 252-53 (D.C.

Cir. 1977). With respect to the Wagner Request, as sufficiently stated in the Plick

Declaration, "MSHA, the client agency, sought advice from the Solicitor of Labor about

the appropriate method to utilize in responding to Massey's allegations while ensuring

appropriate mine safety enforcement," and such discussions "were confidential

communications between high-level client agency officials and the Solicitor." Plick

Decl. ¶ 28; *see* Ex. G to Defs.' Mot. Further, the "Solicitor advised MSHA and other

DOL officials and gave her opinion on the course of action to pursue based upon

confidential communications regarding Massey." *Id.* ¶ 29. The documents withheld by

defendants contain these confidential communications. *See* Ex. G to Defs.' Mot.

With respect to the Comprehensive Request, defendants withheld from disclosure information pertaining to advice sought from MSHA, the client agency, from agency attorneys which were "captured in internal e-mail confidential communications and settlement recommendation documents." Comprehensive Washington Decl. ¶ 30. Specifically, "these are e-mail communications between attorneys within the Office of the Solicitor, and MSHA District Managers and inspectors discussing strategies about matters that are at some stage of litigation." *Id.* ¶ 31; *see* Ex. J to Defs.'CMR Mot.

Thus, defendants properly withheld these confidential attorney-client agency materials pursuant to Exemption 5.

### 3. *Deliberative Process Privilege*

The deliberative process privilege exempts from disclosure documents containing deliberations comprising part of a process by which governmental decisions and policies are made so long as they are "predecisional." *Klamath*, 532 U.S. at 8; *Sears*, 421 U.S. at 151-54. "[T]he ultimate purpose of this long-recognized [deliberative process] privilege is to prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. Defendants asserted the deliberate process privilege to withhold information that "is predecisional and deliberative" and was "created as a result of the confidential intra-agency e-mail exchanges, and deliberations, opinions, legal advice and inquiries contained in e-mails, charts, and other draft documents." Plick Decl. ¶ 31; *see* Ex. G to Defs.' Mot.; Comprehensive Washington Decl. ¶ 34. With respect to the Wagner Request, as clearly stated by the Plick Declaration, "DOL and MSHA officials and staff held numerous intra-agency meetings and discussions and exchanged e-mails in order to

13

determine the appropriate way to respond to Massey's allegations," and "[m]uch of the information described in the Vaughn consists of deliberations over concepts and ideas among DOL officials and MSHA staff." Plick Decl. ¶ 31.

With respect to the comprehensive request, defendants withheld information relating to "recommendations regarding the potential assessment of fines against a miner or referrals to federal prosecutors of miners for violations of safety hazards." Comprehensive Washington Decl. ¶ 35. As clearly stated by the Washington declaration, the "information is pre-decisional because the discussions and review concerning whether a miner will eventually be referred for prosecution or assessments is currently ongoing" and "[t]his information is considered to be highly sensitive and is kept internally within MSHA and not shared with the mining community." *Id.*; *see* Ex. J to Defs.' CMR Mot.

Here, the disclosure of any of the withheld information "could have a chilling effect on open, frank communications between the Solicitor of Labor, MSHA and other agency officials and subordinates." Plick Decl. ¶ 32; Comprehensive Washington Decl. ¶ 36. Therefore, defendants properly invoked Exemption 5 to protect these records.

*B. FOIA Exemption 7(A)*

Defendants withheld information under FOIA exemption 7(A), which protects from disclosure "records or information compiled for law enforcement purposes" if disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To justify withholding information pursuant to Exemption 7(A), the agency must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or *reasonably*

14

*anticipated.*" *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

Indeed, "an agency may invoke Exemption 7(A) to protect pending investigations or

actual enforcement proceedings." *Kay v. F.C.C.*, 976 F. Supp. 23, 37-38 (D.D.C. 1997).

The Supreme Court and our Circuit have upheld the withholding of documents pursuant

to Exemption 7(A) where, for example, disclosure would result in witness intimidation or

would reveal the scope and direction of an investigation, which could allow the target to

construct fraudulent defenses or alibis to avoid prosecution or destroy or alter evidence.

*North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989) (collecting cases).

 Here, with respect to the MPAS Request, MSHA has withheld one page of

information—specifically, one page of handwritten notes pertaining to ventilation at the

Mine—from disclosure pursuant to Exemption 7(A) to prevent any interference with an

ongoing criminal FBI investigation. Washington Decl. ¶ 54; Declaration of James F.

Lafferty II ("Lafferty Decl.") ¶¶ 1-2, Ex. 3 to Defs.' Mot., May 5, 2011; Ex. B to Defs.'

Mot., May 9, 2011. As the Lafferty Declaration clearly states, "public disclosure of

[these notes] could reasonably be expected to harm the FBI's investigation by (i)

revealing the content of potential testimony and (ii) revealing information about the likely

scope, direction, or focus of the criminal investigation." Lafferty Decl. ¶ 4. Because

"[p]rematurely revealing the content of this potential testimony could give important

information to potential witnesses or defendants that would allow them to construct false

testimony or otherwise falsify or alter evidence," *id.*, defendants properly asserted

Exemption 7(A) with respect to this one-page document. *See North*, 881 F.2d at 1097.

 Additionally, in response to the request for transcripts and notes of the Hardman

interview, DOL invoked Exemption 7(A) to withhold 239 pages in full to protect ongoing investigations and enforcement proceedings. *See* Declaration of Norman Page ("Page Decl.") ¶¶ 4, 7, Ex. 2 to Defs.' Mot., May 5, 2011; Ex. F to Defs.' Mot; Supp. Washington Decl. ¶ 6. The interview statements "address MSHA's immediate response upon notification of the accident at the Upper Big Branch mine, MSHA's ventilation plan approval process at the Upper Big Branch mine, including recent failures by the operators to follow the ventilation, methane and dust control plans at Upper Big Branch mine, and Mr. Hardman's knowledge and comments pertaining to the 2003 and 2004 methane outburst incidents." Page Decl. ¶ 7. Premature disclosure "of the interview transcripts of Robert Hardman may cause an adverse impact to the ongoing enforcement proceedings as the cause or causes of the disaster are investigated." *Id.* ¶ 8. Further, as the Page Declaration sufficiently states, "[r]eleasing the transcript of a key witness such as Mr. Hardman, before other witnesses are called back or interviewed for the first time, may compromise the integrity of the investigation as these witnesses would have access to Mr. Hardman's information and conclusions on enforcement activities at the Upper Big Branch Mine." *Id.* Because the defendants asserted Exemption 7(A) to prevent interference from ongoing investigations and enforcement proceedings, defendants properly asserted the Exemption. *See North*, 881 F.2d at 1097; *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 243 (1978) (holding that the release statements of witnesses would necessarily interfere with enforcement proceedings).

## C. FOIA Exemption 7(C)

Exemption 7 applies to "records or information compiled for law enforcement purposes" if disclosure of such records would lead to one of various enumerated harms. 5 U.S.C. § 552(b)(7). Exemption 7(C), in particular, protects information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Thus, in determining the applicability of Exemption 7(C), the Court must balance the interests advanced by FOIA's disclosure requirements against the privacy interests of the individuals mentioned in the records. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). "Because the FOIA is concerned with the right of the general public to know what their government is up to, the identity and interest of the party requesting the document are irrelevant to this balancing." *Mays v. DEA*, 234 F.3d, 1324, 1327 (D.C. Cir. 2000).

Here, defendants asserted Exemption 7(C) to withhold information clearly compiled for "law enforcement purposes." *See* 5 U.S.C. § 552(b)(7). As the Washington Declaration states, defendants are withholding from documents that were "compiled for law enforcement purposes"[3] miners' names, cell phone numbers, and home phone numbers; inspectors' names and e-mail addresses; inspectors' initials; MSHA employees' government issued cell phone numbers, home addresses, and home telephone numbers; third party home addresses, dates of birth, last four digits of social security numbers; and miners' job titles and ethnicities. Washington Decl. ¶ 63; Page Decl. ¶ 6; *see* Ex. A-1, B-

---

[3] Specifically, the documents were compiled for law enforcement activities related to the 2003 and 2004 methane outburst incidents and the 2010 disaster. *See* Page Decl. ¶ 5; Washington Decl. ¶ 63.

17

1, C-1, D-1, E-1, F-1, H to Defs.' Opp'n; Ex. G to Defs.' Mot.; Ex. H-J to Defs.' CMR

Mot.  Defendants withheld this information to protect the inspectors, government

employees, and miners from "harassment, intimidation and the possibility of physical

harm" and to prevent "an unwarranted invasion of [their] personal privacy."  Washington

Decl. ¶ 64; *see* Comprehensive Washington Decl. ¶ 38.  As there is no public interest

asserted by plaintiffs that outweighs such a substantial privacy interest, *see Mays*, 234

F.3d at 1327, defendants correctly withheld the information under Exemption 7(C).[4]

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' motions for

summary judgment [#28 and #42] and DENIES plaintiffs' cross-motions for summary

judgment [#34 and #43].  An Order consistent with this decision accompanies this

Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[4] Plaintiffs' motion to conduct discovery pursuant to Fed. R. Civ. P. 56(f) is denied.  *See Brunsilius v. Dep't of Energy*, 514 F. Supp. 2d 30, 36 n.2 (D.D.C. 2007) ("Discovery is generally inappropriate in a FOIA case."); *Voinche v. F.B.I.*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006) ("FOIA actions are typically resolved without discovery.").